# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### SEPTEMBER 19, 2001 Session

## DARIN SHAFFER, ET AL. v. SHELBY COUNTY, TENNESSEE

### Direct Appeal from the Circuit Court for Shelby County
### No. 86335-9 T.D.; The Honorable Robert L. Childers, Judge

_____

### No. W2000-02215-COA-R3-CV - Filed January 11, 2002

_____

This appeal involves an accident in which a mother and son were hit by an automobile. The mother received fatal injuries in the accident. The survivors brought an action against Shelby County for the wrongful death of the mother and for negligent infliction of emotional distress with respect to the son. A jury found Shelby County liable for $12,039,049.01. The award was reduced in accordance with the Governmental Tort Liability Act (the GTLA) to $260,000.00 plus discretionary costs of $5,434.55. The plaintiffs appealed the reduction of liability alleging that the GTLA violated the Tennessee Constitution and should be judicially abrogated. The plaintiffs further allege that even if the GTLA is upheld, liability should be capped at $350,000.00 as opposed to $260,000.00. Shelby County also raises several issues in this appeal. First, Shelby County alleges that it was performing a discretionary function, which immunizes it from liability. Shelby county also contends that the proof shows the mother to be at fault and fails to show that the son suffered a serious emotional injury. In addition, Shelby County argues that the verdicts were excessive and were tainted by inappropriate arguments made during the plaintiffs' closing. Finally, Shelby County alleges that the trial court erred by assessing discretionary costs, which caused the award to exceed the GTLA's statutory cap on damages. For the following reasons, we reverse the trial court's award of discretionary costs and affirm the trial court in all other respects.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Affirmed in Part, Reversed in Part and Remanded

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY KIRBY LILLARD, J., joined.

Thomas J. Cullen, Jr., Ericka L. Kleiman, Baltimore, MD; Scott A. Frick, Memphis, TN, for Appellants

Carroll C. Johnson, Memphis, TN, for Appellee, Shelby County, Tennessee

Paul G. Summers, Attorney General & Reporter, Michael E. Moore, Solicitor General, Laura T. Kidwell, Assistant Attorney General, Nashville, TN, for Intervenor-Appellee, State of Tennessee

## OPINION

### I. Facts and Procedural History

On October 2, 1996, Andrea Shaffer (Ms. Shaffer) was struck and killed by an automobile. The accident occurred while Ms. Shaffer was jogging westbound in the Riverwood Farms Subdivision on the north side of Riverwood Farms Parkway immediately adjacent to the curb. Darin Andrew Shaffer (Darin), Ms. Shaffer's son, was with her at the time of the accident. Darin was being pushed in a jogging stroller, which was also hit by the automobile. Ms. Shaffer was survived by her husband, Darin Leo Shaffer (Mr. Shaffer), and two minor children, Darin and Jenna Shaffer (Jenna; Ms. Shaffer's husband and children shall be collectively referred to as Appellants).

Under various theories of negligence, Appellants filed a complaint against numerous defendants including Shelby County, Tennessee (Appellee) for the wrongful death of Ms. Shaffer and for injuries sustained by Darin. Appellants claimed that Appellee was under a contractual obligation with a subdivision developer to install a sidewalk along the parkway where the accident occurred. Although developers normally assume the duty to install sidewalks, Appellee had been paid $42,570.42 by the developer in 1986 to complete the project. At the time of the accident, in 1996, Appellee had not yet finished the sidewalks due to complaints lodged by fellow residents in the development. Appellants claimed that the failure to complete the project constituted negligence on the part of Appellee and was the direct and proximate cause of Ms. Shaffer's death and Darin's injuries.

The matter was tried before a jury. The jury found in favor of Appellants and allocated seventy-five percent of the fault to Appellee. No fault was apportioned to Ms. Shaffer.[1] The jury awarded Appellants damages totaling $16,052,065.34 as follows:

| | |
|---|---|
| Andrea Shaffer - pain and suffering | $5,000,000.00 |
| Medical Expenses | $41,173.14 |
| Funeral Expenses | $10,892.20 |
| Pecuniary value of life of Andrea Shaffer | $500,000.00 |
| Darin Leo Shaffer - Loss of Consortium | $2,500,000.00 |
| Jenna Shaffer - Loss of Consortium | $5,000,000.00 |
| Darin Andrew Shaffer - Loss of Consortium | $2,500,000.00 |
| Darin Andrew Shaffer - Emotional Distress | $500,000.00. |

---

[1] The remaining twenty-five percent of fault was allocated to a non-party.

Accordingly, $12,039,049.01 of the damages were allocated to Appellee based on their percentage of fault.

Soon after the verdict was announced, Appellee filed a motion to set the liability limits in accordance with Sections 29-20-101 *et. seq.* of the Tennessee Code, the Governmental Tort Liability Act (the GTLA). Appellants' opposition to the motion filed by Appellee consisted in part of allegations that the GTLA violated the Tennessee Constitution and should be judicially abrogated. The State of Tennessee intervened to defend the constitutionality of the GTLA and has also taken part in this appeal.

The trial court granted Appellee's motion and set Appellee's liability at $260,000.00: $130,000.00 for the wrongful death of Ms. Shaffer and $130,000.00 for Darin's individual claim. Appellants appeal from that decision and both sides have raised numerous issues for our review.

## II. Issues

Appellants raise the following issues in this appeal:

1.      Whether sovereign immunity should be abrogated in Tennessee;

2.      Whether the liability limits proscribed in the Governmental Tort Liability Act violate the Tennessee Constitution;

3.      Whether the trial court erred in subjecting the awards for loss of consortium to the statutory limits proscribed in the Governmental Tort Liability Act; and

4.      Whether the trial court erred by not taking into account the loss of consortium claims in setting Appellee's total liability at $260,000.00 as opposed to $350,000.00.

Appellee raises the following issues in this appeal:

5.      Whether the decision of Shelby County to defer construction of sidewalks in Riverwood Farms Subdivision was a discretionary function for which the county is immune from liability pursuant to Section 29-20-205 of the Tennessee Code;

6.      Whether the proof was sufficient to sustain the claim of the minor plaintiff for negligent infliction of emotional distress;

7.      Whether the trial court erred by refusing to grant Appellee's motion for directed verdict based on Ms. Shaffer's alleged fault;

8.      Whether the verdicts were excessive;

9.     Whether counsel for Appellants made an inappropriate argument in closing statements; and

10.    Whether the trial court erred in awarding discretionary costs.

### III. Law and Analysis

With regard to the first issue, Appellants rely on general considerations of public policy in reaching their conclusion that this Court should judicially abolish sovereign immunity. As stated by the Tennessee Supreme Court, "only in the absence of any declaration in [the Constitution and statutes] may [public policy] be determined from judicial decisions. . . . All questions of policy are for the determination of the legislature, and not for the courts. . . . Where courts intrude into their decrees their opinion on questions of public policy, they in effect constitute the judicial tribunals as lawmaking bodies in usurpation of the powers of the legislature." Smith v. Gore, 728 S.W.2d 738, 747 (Tenn. 1987) (quoting Cavender v. Hewitt,, 239 S.W. 767, 768 (1921)). Further, as we have previously stated, sovereign immunity in Tennessee arises from our constitution as well as our statutory scheme. Austin v. City of Memphis, 684 S.W.2d 624, 637 (Tenn. Ct. App. 1984). Accordingly, Appellant's lengthy criticism of the policy defined under the doctrine of sovereign immunity and the General Assembly's refusal to abolish it is misplaced. This Court lacks authority to nullify the doctrine based on such grounds, and as such, we refuse to debate the public policy issue.

### *Constitutionality of the GTLA*

With regard to the second issue, Appellants assert that the GTLA's cap on damages violates three provisions of the Tennessee Constitution: Article I, Sections 8, 17, and 21. We disagree with Appellant's contentions, however, and for the following reasons, hold that the GTLA's statutory cap on damages does not violate the Tennessee Constitution.

We will first discuss the constitutionality of the GTLA with respect to Article I, Section 17 of the Tennessee Constitution. Article I, Section 17, the Open Courts Provision, provides:

> That all courts shall be open; and every man, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial, or delay. Suits may be brought against the State in such manner and in such courts as the Legislature may by law direct.

Based on the second sentence in Article I, Section 17, our supreme court has held that, "[t]he State of Tennessee, as a sovereign, is immune from suit except as it consents to be sued." Brewington v. Brewington, 387 S.W.2d 777, 779 (Tenn. 1965) (quoting Hill v. Beeler, 286 S.W.2d 868, 869 (Tenn. 1956)). Accordingly, this provision has been deemed a grant of sovereign immunity to our State.

In accordance with Article I, Section 17 of the Tennessee Constitution, the General Assembly enacted the GTLA, which directs the manner in which our State can be sued. The GTLA states that all governmental entities are immune from suit except where otherwise provided within the GTLA. TENN. CODE ANN. § 29-20-201(a) (2000). This immunity protects governmental entities from suits arising from the exercise and discharge of any of the entity's functions, whether governmental or proprietary. Id. In addition, for suits that are allowed, the relevant liability of a governmental entity is capped at $130,000.00 per individual and $350,000.00 per "accident, occurrence, or act." Id. at § 29-20-403(b)(2)(A).

-4-

Appellants' contention is that the GTLA impinges fundamental rights secured by Article 1, Section 17 and requires strict scrutiny review. In support of this contention, Appellants assert that the GTLA takes away their "constitutional right of court access." Further, because a fundamental right has been impinged and because the GTLA lacks narrow tailoring and a compelling state interest, Appellants argue that the GTLA violates the Tennessee Constitution.

To arrive at their broad assertion, Appellants appear to focus merely on the first sentence of Article 1, Section 17, which grants individuals access to the courts. Appellant's argument, however, apparently overlooks the second sentence in Article I, Section 17. That provision provides that this State has been empowered to allow or deny claims brought against it upon action of the General Assembly. The passage of the GTLA was a direct exercise of this authority. We must also remember that Appellants were never denied access to the courts. Although the damages awarded by the jury exceeded the applicable cap on damages, Appellants were given adequate compensation as defined by our Constitution and General Assembly.

Appellants also offer a second argument with regard to the alleged unconstitutionality of the GTLA in light of Article I, Section 17. Appellants assert that before the enactment of the GTLA, at common law, a direct cause of action against Appellee would have existed. Before enactment of the GTLA, courts held that governmental entities committing torts in pursuit of proprietary endeavors, as opposed to governmental functions, could not be shielded from liability under sovereign immunity. See Crowe v. John W. Harton Memorial Hospital, 579 S.W.2d 888, 891 (Tenn. Ct. App. 1979). Accordingly, Appellants allege that the contract entered into by Appellee to construct the sidewalk was proprietary in nature and, thus, would have opened the door to liability. Extinguishment of this claim by the enactment of the GTLA, Appellants aver, renders the enactment unconstitutional.

We hold the distinction between proprietary and governmental functions to be irrelevant to our analysis. As this Court so aptly stated in Crow:

> The Legislature possesses unlimited power to enact laws except as specifically limited by the Constitution. Dennis v. Sears, Roebuck & Co., 223 Tenn. 415, 446 S.W.2d 260 (1969). There is no express constitutional prohibition against the extension of immunity to municipalities operating in their proprietary, as well as their governmental, capacities. The traditional rationale for establishing a special category of immunity for municipalities exercising their governmental functions include that the city does not profit from the exercise of its governmental functions, Howard v. City of Worcester, 153 Mass. 426, 27 N.E. 11 (1891), that the city cannot properly conduct government if it must utilize its tax revenues to compensate for the torts of its agents, and that it is unreasonable to hold the city liable for the torts committed by its agents in the performance of state-imposed duties, Boise Development Co. v. Boise City, 30 Idaho 675, 167 P. 1032, 1034 (1917).
>
> The Legislature could reasonably find that these, or similar, concerns compel the extension of immunity here involved. Moreover, as Justice Henry pointed out in Cooper v. Rutherford County, supra, the specific distinction between governmental and proprietary functions has eluded the Tennessee courts and has been a source of

> inconsistent decisions in this State; by extending immunity to municipalities in the exercise of all functions, the Legislature has accorded a greater measure of certainty to this confused area of the law. Accordingly we find the provisions of the Tennessee Governmental Tort Liability Act which extend immunity to municipalities operating in their proprietary capacities to be a valid legislative enactment.

Id. at 892. Although in Crow, this Court was discussing liability with respect to municipalities, the same reasoning applies to counties. Thus, we hold that the GTLA cannot be deemed unconstitutional with respect to Article I, Section 17.

Appellants also contend that the GTLA violates the Tennessee Constitution in light of Article I, Sections 8 and 21. Article I, Section 8, known as the Law of the Land Clause, provides, "[t]hat no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land." This provision has been interpreted as being synonymous with the due process guarantees of the Fifth and Fourteenth Amendments of the United States Constitution. Planned Parenthood of Middle Tenn. v. Sundquist, 38 S.W.3d 1, 35, n. 10 (Tenn. 2000).

Appellants argue that the GTLA is in violation of Article I, Section 8 due to the disparate treatment given to plaintiffs proceeding against governmental entities that commit torts. Although all damages awarded to plaintiffs proceeding under the GTLA are capped at the same level, Appellants' contention is that plaintiffs more severely injured suffer greater impairment by the cap. In effect, Appellants argue that the GTLA establishes various classes, with membership to such classes being defined by the level of injury suffered. For example, where some plaintiffs with relatively minor injuries may be fully compensated for their loss, others suffering relatively serious injuries may not. When members of a class whose damages should exceed the damages cap imposed under the GTLA are limited in recovery, Appellants contend that such disparate treatment violates the Constitution.

We find this argument to be without merit. As this court stated in King-Braddwell Partnership v. Johnson Controls, Inc., 865 S.W.2d 18, 21 (Tenn. Ct. App. 1993), under the United States Constitution, and similarly Article I, Section 8 of the Tennessee Constitution, only rational basis review is required when no fundamental right is infringed and no suspect class is affected. Here, no suspect class distinction deserving strict scrutiny review exists. Further, Appellants have failed to articulate any fundamental right being infringed. Our review of the applicable case law reveals the same result. Accordingly, there being no suspect class or fundamental right involved, the GTLA is entitled to a rational basis review. As pointed out in Crow, a rational basis exists for limiting the liability of a governmental entity for torts committed by its agents.

Appellants point to a second alleged flaw in the GTLA, which they contend violates the Tennessee Constitutions's equal protection guarantees. Appellants contend that Section 29-20-

403(d), now designated "Obsolete" in the Tennessee Code, was enacted to benefit two tourists injured by a municipal electric company to avoid inadequate compensation for their injuries. As stated by Appellants, "[t]he removal of liability limitations in this one instance highlights the GTLA's inherent unfairness. . . ."

Section 29-20-403(d) is wholly irrelevant to our analysis. Further, Appellants have indicated no harm caused to them under this provision. Thus, we find Appellants' argument with respect to this Section to be without merit and hold that the GTLA is not in violation of the Tennessee Constitution.

### *Loss of Consortium*

With regard to the third issue, we hold that the trial court did not err in subjecting the awards for loss of consortium to the statutory limits proscribed in the GTLA. The Tennessee Supreme Court recently addressed this issue in Hill v. City of Germantown, 31 S.W.3d 234 (Tenn. 2000). In Hill, the supreme court held that, "loss of consortium damages in a wrongful death claim are wholly contained within the award for wrongful death." Id. at 240. Accordingly, no distinct cause of action for loss of consortium exists under our wrongful death statute. Applying this holding to the case *sub judice*, Appellants' claim for wrongful death encompassed any claim for loss of consortium related to Ms. Shaffer's death and damages were properly limited in accordance with the GTLA.

Appellants, in their argument, rely on this Court's holding in Swafford v. City of Chattanooga, 743 S.W.2d 174 (Tenn. Ct. App. 1987). Such reliance, however, is misplaced. In Swafford, common law claims for loss of consortium resulting from a personal injury, as opposed to wrongful death, were brought against Chattanooga by the spouse of a tort victim. This Court held that with respect to common law claims for loss of consortium, "the right to recover for loss of consortium is a right independent of the spouse's right to recover for the injuries themselves." Id. at 178. Given the independence of the spouse's claim, this Court, when closely inspecting the language of the GTLA, held that damages for claims for loss of consortium fell outside the gambit of damages covered by the GTLA. Id. at 178-79.

Our holding, however, was based on the conclusion that, at common law, the spouse's rights were independent of the underlying injury. Given the supreme court's stance on the lack of independence for damages for loss of consortium under our wrongful death statute, our holding in Swafford has no application in this case. Accordingly, we hold that the damages awarded for loss of consortium were properly limited by the GTLA.

With regard to the fourth issue, we hold that the damages awarded to Appellants were properly capped at $260,000.00 as opposed to $350,000.00. As quoted above, "loss of consortium damages in a wrongful death claim are wholly contained within the award for wrongful death." Hill, 31

S.W.3d at 240. The damages for loss of consortium suffered by Appellants was properly considered to be one claim under the GTLA that had to be limited to $130,000.00. Given that only one other party, Darin, suffered distinct injuries, the total liability attributed to Appellee could not have exceeded $260,000.00.

### *Discretionary Function*

With regard to the fifth issue, we hold that the trial court did not err in refusing to grant summary judgment to Appellee based on discretionary function immunity. A lower court's grant of summary judgment is not entitled to a presumption of correctness on appeal. McClung v. Delta Square Ltd. Partnership, 937 S.W.2d 891, 894 (Tenn. 1996). Rather we must review *de novo* to determine whether the requirements of Tennessee Rule of Civil Procedure 56 have been met. Mason v. Seaton, 942 S.W.2d 470,472 (Tenn. 1997). A summary judgment is warranted only when there are no genuine, material factual disputes with regard to the claim or defense asserted in the motion and the moving party is entitled to a judgment as a matter of law. Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997). In making our determination, we must take the strongest view of the evidence in favor of the nonmoving party, allowing all reasonable inferences in his favor and discarding all countervailing evidence. Shadrick v. Coker, 963 S.W.2d 726, 731 (Tenn. 1998) (citing Byrd v. Hall, 847 S.W.2d 208, 210-11 (Tenn. 1993)).

Section 29-20-205 of the Tennessee Code provides that, "[i]mmunity from suit of all governmental entities is removed . . . except if the injury arises out of: (1) the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused." Our supreme court has repeatedly defined "discretionary function"as the following:

> Where the duty is absolute, certain, and imperative, and is simply ministerial, the officer is liable in damages to any one specially injured, either by his omitting to perform the task or by performing it negligently or unskillfully. On the other hand, where his powers are discretionary, and to be exerted or withheld according to his own judgment, he is not liable to any private person for a neglect to exercise those powers, nor for the consequences of a willful exercise of them, where no corruption or malice can be imputed to him, and he keeps within the scope of his authority.

Bowers v. City of Chattanooga, 826 S.W.2d 427, 430 (Tenn. 1992) (quoting Hale v. Johnston, 203 S.W. 949, 953 (Tenn. 1918)). Appellee contends, based on this definition, that the decision to delay installation of the sidewalks in the Riverwood Farms Subdivision was a discretionary function and, thus, that Appellee deserves immunity from suit.

We disagree with Appellee's contention. Although at first glance, Appellee's decision may appear discretionary, upon closer inspection, several facts exist that rendered summary judgment inappropriate. Appellee offered evidence that the contract entered into between the developer and Appellee, as well as Shelby County regulations, required Appellee to complete the sidewalk unless a variance was obtained from the local Land Use Board (the Board). Although the Board approved a variance alleviating Appellee's duty to complete sidewalks on the southern side of the road, Appellee was still required to complete sidewalks on the north side.[2] Thus, Appellee was under a duty to complete the project or seek a variance. Because no variance was sought, the duty remained. The evidence of Appellee's duty to install sidewalks on the north side of the road rendered the refusal to grant summary judgment proper.

### *Negligent Infliction of Emotional Distress*

With regard to the sixth issue, we affirm the trial court and hold that the proof was sufficient to sustain Darin's claim for negligent infliction of emotional distress. At the close of proof, Appellee made a motion for directed verdict with respect to Darin's claim, which was denied by the court. Appellee now argues that the court erred in refusing to grant the motion.

In ruling on a motion for a directed verdict, both the trial court and the appellate court are required to review the record, discard all countervailing evidence, take the strongest legitimate view of the evidence in favor of the non-moving party, and allow all reasonable inferences in his favor. Williams v. Brown, 860 S.W.2d 854, 857 (Tenn.1993) (quoting Cecil v. Hardin, 575 S.W.2d 268, 271 (Tenn.1978)); Jones v. Zayre, Inc., 600 S.W.2d 730, 731 (Tenn.Ct.App.1980). "The court may grant the motion only if, after assessing the evidence according to the foregoing standards, it determines that reasonable minds could not differ as to the conclusions to be drawn from the evidence ." Eaton v. McLain, 891 S.W.2d 587, 590 (Tenn.1994).

With regard to Appellee's contention, our supreme court, in Camper v. Minor, 915 S.W.2d 437 (Tenn. 1996), set out the elements necessary to establish a claim for negligent infliction of emotional distress. In addition to proving the general elements for negligence, a plaintiff must also show that a serious or severe emotional injury has occurred. Id. at 446. A serious or severe emotional injury occurs "where a reasonable person, normally constituted, would be unable to adequately cope with the circumstances of the case." Id. (citations omitted). Further, such injuries "must be supported by expert medical or scientific proof." Id.

Appellee argues that the evidence at trial failed to establish that Darin suffered a serious or severe emotional injury. When taking the strongest legitimate view of the evidence in favor of Darin, however, we see that a directed verdict in Appellee's favor would not have been proper. Appellants offered expert medical testimony from a developmental neuropsychologist, who sufficiently indicated that Darin had indeed suffered a severe emotional injury. The expert indicated that Darin suffered at the accident site as well as immediately after the accident in the hospital. Accordingly, we find Appellee's arguments to be without merit.

---

[2] We note that Ms. Shaffer and Darin were on the north side of the road at the time of the accident.

Appellee also contends that the proof was insufficient for the jury to find in favor of Darin on his claim of negligent infliction of emotional distress. Our standard of review as to findings of fact by a jury in a civil action is limited to determining whether there is any material evidence to support the verdict. TENN. R. APP. P. 13(d). Appellate courts do not determine the credibility of witnesses or weigh evidence on appeal from a jury verdict. Pullen v. Textron, Inc., 845 S.W.2d 777, 780 (Tenn. Ct. App. 1992) (citing Crabtree Masonry Co. v. C & R Constr., Inc., 575 S.W.2d 4, 5 (Tenn. 1978)). A judgment based on a jury verdict will not be disturbed on appeal where the record contains material evidence supporting that verdict. Reynolds v. Ozark Motor Lines, Inc., 877 S.W.2d 822, 823 (Tenn. 1994).

Again, expert medical proof was offered by Appellants. Although Appellee refers to the evidence offered by the expert as "scant," we hold that it was sufficient to support the jury's verdict and render a motion for directed verdict improper. Accordingly, we affirm the lower court's decision with respect to the claims of Darin for negligent infliction of emotional distress.

### *Comparative Fault*

With regard to the seventh issue, we hold that the trial court did not err by refusing to grant Appellee's motion for directed verdict with respect to Ms. Shaffer's wrongful death claim. At the conclusion of Appellant's proof, Appellee argued that a directed verdict was proper for two reasons: (1) the jury was forced to speculate on whether Ms. Shaffer would have used the sidewalks if installed and (2) Ms. Shaffer's choice to put herself in danger by running on a road with no sidewalks made her responsible for at least half the fault. On appeal, however, Appellee only challenges the trial court's ruling based on its assertion that Ms. Shaffer was in violation of Section 55-8-138 of the Tennessee Code at the time of the accident and was negligent as a matter of law.

Our review of the record reveals that during arguments for the directed verdict, Appellee failed to discuss negligence as a matter of law with respect to the alleged statutory violation. As a general rule, appellate courts do not "consider issues not dealt with in the trial court and not properly developed in the proof." Reid v. State, 9 S.W.3d 788, 796 (Tenn.Ct.App.1999) (quoting Harlan v. Hardaway, 796 S.W.2d 953, 957 (Tenn.App.1990)). If an issue "is not properly raised in the trial court, it will not be considered on appeal." Id. Accordingly, we find Appellee's arguments on appeal with regard to this issue to be without merit.

### *Verdict Amounts*

With regard to the eighth issue, we hold that the verdicts were not excessive. Appellee challenges the award of damages for both the wrongful death of Ms. Shaffer and for Darin's injuries. We shall review, however, only the damages awarded for Darin's injuries. With regard to the wrongful death damages, Appellee concedes that the pecuniary value of Ms. Shaffer's life was at least $500,000.00. Because the award was reduced to $130,000.00 pursuant to the GTLA, the issue of damages for wrongful death are moot.

Appellee contends that, with regard to the damages awarded for Darin's injuries, even the reduced amount of $130,000.00 is excessive. Our supreme court has held that, "[t]he amount of the verdict is primarily for the jury to determine, and next to the jury the most competent person to pass upon the matter is the judge who presided at the trial and heard the evidence." Thrailkill v. Patterson, 879 S.W.2d 836, 841 (Tenn. 1994) (citations omitted). We are also mindful that our review of findings of fact by a jury in a civil action is limited to determining whether there is any material evidence to support the verdict. TENN. R. APP. P. 13(d).

Applying this standard of review, we hold that the verdict, which set damages for Darin's claim of negligent infliction of emotional distress at $130,000.00, was not excessive. As discussed above, Appellant's expert testified to the trauma Darin suffered both at the accident site and immediately after in the hospital. Under these circumstances, $130,000.00 is not excessive.

### *Closing Arguments*

With regard to the ninth issue, Appellee asserts that Appellant's counsel made inappropriate arguments to the jury during the closing statements. Specifically, Appellee argues that Appellant's counsel displayed to the jury a poster, which set out proposed awards for various elements of damage. Appellee further argues that the proposed awards influenced the jury's ultimate decision. It is well established that trial courts are vested with discretion in controlling the arguments of counsel throughout the course of the trial. Perkins v. Sadler, 826 S.W.2d 439, 442 (Tenn. Ct. App.1991) (citations omitted). In Saddler, we stated that an appellate court will generally not interfere with discretionary actions of a trial court unless it affirmatively finds that the action of counsel affected the result of the trial. Id. Accordingly, our review will focus on the effects counsel's statements had on the verdict.

Appellee has pointed to no evidence in the record that indicates the statements made by Appellant's counsel had any impact on the outcome. Instead, that record indicates that after Appellant's counsel made the allegedly inappropriate argument, Appellant's counsel stated:

> Ladies and gentlemen of the jury, it is your responsibility to evaluate what this family has lost, to evaluate the true value of Andrea's pain and suffering, to evaluate how Darin should be compensated for the loss of his wife, how Jenna should be compensated, how Darin Andrew should be compensated and how Darin should be compensated for the emotional injury he suffered as a result of this accident.

This statement confirmed to the jury that they held the sole responsibility to determine any damages to be awarded. Accordingly, we refuse to disturb the discretionary action of the trial court with regard to the arguments made during closing by Appellant's counsel.

### *Discretionary Costs*

With regard to the tenth issue, we reverse the trial court's decision to award $5,434.55 in discretionary costs to Appellants. Generally, pursuant to Rule 54.04(2) of the Tennessee Rules of Civil Procedure, trial courts maintain discretion in awarding parties certain costs associated with

litigation. This Court, however, has recently discussed discretionary costs and their limits under the GTLA.

In <u>Cox v. Anderson County Highway Dep't</u>, No. 03A01-9902-CV-00074, 2000 WL 250126 (Tenn. Ct. App. March 7, 2000), we held that once the statutory maximum under the GTLA has been awarded, discretionary costs cannot be granted by the trial court over and above that amount. As was stated in <u>Cox</u>, no exceptions exist in Section 29-20-404(a) or 29-20-403, which would allow recovery in any manner above the statutory amount. <u>Id.</u> at *8. Accordingly, we reverse the trial court's decision to award discretionary costs to Appellants.

## IV. Conclusion

For the foregoing reasons, the decision of the lower court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed equally against the Appellants, Darin Shaffer, as Personal Representative of The Estate of Andrea Shaffer, and in his individual capacity, and Darin Shaffer, as Parent and Next Friend of Jenna Christine Shaffer and Darin Andrew Shaffer, and their sureties, and the Appellee, Shelby County, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE