IN THE COURT OF APPEALS OF TENNESSEE,
AT JACKSON

**FILED**

April 28, 1999

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

|  |  |  |
|---|---|---|
| **E. L. REID**, | ) | Claims Commission No. 97-002-866 |
|  | ) |  |
| Claimant/Appellant. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 02A01-9810-BC-00293 |
|  | ) |  |
| **STATE OF TENNESSEE**, | ) |  |
|  | ) |  |
| Defendant/Appellee. | ) |  |
|  | ) |  |

From the Claims Commission of the State of Tennessee, Western Division
**Martha B. Brasfield, Commissioner of Claims**

**E. L. Reid**, Pro Se
Claimant/Appellant.

**Paul G. Summers**, Attorney General and Reporter
**Michael E. Moore**, Solicitor General
**Sohnia W. Hong**, Assistant Attorney General
Attorneys for Defendant/Appellee.

OPINION FILED:

**AFFIRMED**

**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**LILLARD, J.**: (Concurs)

Claimant E. L. Reid appeals the final order of the Commissioner of Claims which awarded Reid $50 for the loss of a radio/compact disc player. We affirm the Claims Commissioner's final order.

In September 1996, Reid, an inmate at the Northwest Correctional Center (NWCC) in Tiptonville, Tennessee, filed a claim with the Division of Claims Administration for the loss of a radio/compact disc player. Reid's claim alleged that, during the summer of 1996, Tennessee Department of Correction (TDOC) officials required Reid to spend sixty days in segregation in retaliation "for his jail house lawyer type activities." During his segregation, TDOC officers took Reid's radio to be stored in the facility's small property room holding area. Apparently, the radio was not returned to Reid after his sixty-day segregation ended, and Reid alleged that TDOC officers had stolen the radio. Reid sought an award of damages against the State of Tennessee in the amount of $150 for the actual value of the radio, plus $100 per day for "doing without" the radio.

The Division of Claims Administration offered to settle Reid's claim for $85. Unsatisfied with this amount, Reid filed his claim with the Claims Commission. *See* T.C.A. § 9-8-402(c) (Supp. 1997).[1] Thereafter, Reid filed a motion to remove his claim from the Claims Commission's small claims docket to its regular docket. *See* T.C.A. § 9-8-403(a)(2) (Supp. 1997).[2] The Claims Commissioner entered an order transferring Reid's claim to the regular docket. *See* T.C.A. § 9-8-403(c) (Supp. 1997).[3] The Commissioner's order also indicated that, pursuant to section 9-8-403(h) of the Tennessee Claims Commission Act, Reid's claim would be heard on affidavits. *See* T.C.A. § 9-8-403(h) (Supp. 1997).[4]

In the spring of 1998, Reid filed several discovery requests, including a motion to compel discovery, in which he asked TDOC to produce various documents in its possession. Despite the Commissioner's previous order indicating that Reid's claim would be heard on affidavits, Reid also sought to depose various TDOC employees and officials.

In June 1998, the Commissioner entered an order denying Reid's discovery requests and motion to compel on the ground that the requested items were irrelevant to Reid's personal property claim. In her order, however, the Commissioner ruled in favor of Reid on the issue of the State's liability for the loss of Reid's property. Based upon documents submitted by Reid, the Commissioner made the following findings:

> [Reid]
> has
> shown

---

[1]As pertinent, the Tennessee Claims Commission Act provides that, "[i]f the claim is honored and the damages may be ascertained within the ninety-day settlement period, the division shall so notify the claimant and inform the claimant of the conditions of the settlement offer and of the claimant's right to file such claimant's claim with the claims commission within ninety (90) days of the date of the settlement notice if the conditions of the settlement offer are unacceptable." T.C.A. § 9-8-402(c) (Supp. 1997).

[2]The Claims Commission's small claims docket consists of "claims satisfying the monetary limit applicable to the general sessions court of Davidson County." T.C.A. § 9-8-403(a)(2) (Supp. 1997).

[3]Section 9-8-403(c) provides that, "[a]t the discretion of either party at any time prior to a hearing, a claim may be removed from the small claims docket to the regular docket. Once removed, the claim shall be treated like any other claim on the regular docket." T.C.A. § 9-8-403(c) (Supp. 1997).

[4]Section 9-8-403(h) provides that "[c]laims based on the negligent care, custody or control of personal property by persons in the legal custody of the state shall proceed on affidavits only, except where the commission determines that witnesses should be heard." T.C.A. § 9-8-403(h) (Supp. 1997).

that he owned the property in question and that the property was confiscated when [Reid] was sentenced to punitive segregation . . . . The [State] has not been able to show that the property was returned to [Reid]. It appears that the [State] had the care, custody and control of [Reid's] property, and that said property was never returned to [Reid].

In light of these findings, the Commissioner then ruled that the only remaining issue to be

determined was "the value of the lost property and the amount of the award to be granted." The Commissioner ordered Reid to submit proof of the value of the radio by August 1, 1998, so that the Commissioner could make an award.

In response to the Commissioner's order, Reid filed a document entitled "Motion; Affidavit; Evidence; Memorandum of Law in Support of this Case Based in Law." The document indicated that it was made under oath, and it included Reid's signature; however, the document did not contain a jurat or a notary's signature. Reid asserted in the document that the actual value of the radio was $150 and that he had suffered additional damages of $100 per day for his loss of use and enjoyment of the radio.

In August 1998, the Commissioner entered a final order in which she awarded Reid $50 for the loss of his radio. The Commissioner ruled that Reid was not entitled to the damages requested in his "Motion; Affidavit" because he failed to submit proof of the value of the radio. Nevertheless, the Commissioner awarded Reid $50 based upon her estimate of the property's value. The Commissioner also ruled that the $100 per day claimed by Reid for his loss of use and enjoyment of the radio was not awardable under the Tennessee Claims Commission Act.

On appeal from the Commissioner's final order, Reid has presented thirteen issues for this court's review,[5] many of which overlap and repeat each other. In his first three issues, as well as his eighth, ninth, and eleventh issues, Reid contends that the Commissioner erred in denying his various discovery requests, including his motion to compel discovery. Specifically, Reid's requests sought discovery of the following items:

1.
TDOC
rules &
regulat

---

[5]The Tennessee Claims Commission Act specifically grants this court the authority to review the Commissioner's decision. *See **Shell v. State***, 893 S.W.2d 416, 420 (Tenn. 1995); T.C.A. § 9-8-403(a)(1) (Supp. 1997).

ions

2. Claims Commission rules & regulations for Tennessee

3. NWCC building/pod operation procedures for Building "A" #1 housing unit

4. Post orders for officers in "A" type buildings

5. Post orders for all unit management team members for "A" type buildings

6. Staff/officers log books during the time

[period] of this claim and its investigation

7. All grievances on theft of property from cells and or pods from 1992 to 1998 in TDOC, and the results

8. NWCC policy & operation procedures for investigating theft during the time of # 7 till now

9. TDOC, NWCC policies, operation procedures for providing security & require

ments for inmates and their property.

10. Staffing requirements for "A", building # 1 housing type buildings.

11. Operation procedures for opening electronic locks to cells for "A" type buildings by local building [controls] and main operations [override] type [controls] from operations to include telephone or radio procedures.

12. All

[incident] related reports on this claim, on all theft claims from inmates or their cells in TDOC since 1992 in pods, gilds, or other [similar] housing for inmates.

13.All records on keys for this Claimant's cell, pod, or keys to other cells or pods that will operate Claimant's cell in this claim for a [period] of one year before and after this claim.

14. Record on all [compatible] cell keys at NWCC or other institutions and their [assigned] inmate.

15. Standards of [hiring] staff/officer [personnel] for TDOC & NWCC and policy.

16. Training requirements for staff/officer employees and the training of the staff involved in this claim:

. . . .

17. Operation procedures for working

employees overtime at TDOC/NWCC.

18. Overtime worked by employees working in HSA & "A" building NWCC for years 1995 to 1998.

19. Security procedures, post orders for officers working NWCC-HSA unit; policy for same.

20. List any inmates over security at NWCC; what and how does any inmate at NWC

C have security [control] . . . over any thing.

21. List any policy, procedures, hiring practices at NWCC that inmates have any [control] of and if so, to what extent.

22. Any discovery described above on all other staff [involved] with Claimant during his time at HSA, June 1996 to August, 1996.

Reid also sought to depose various TDOC employees and officials. As previously indicated, the Commissioner denied Reid's requests based upon her conclusion that the requested discovery items were irrelevant to Reid's personal property claim.

When a civil lawsuit is being pursued by a prison inmate, the trial court has the authority to impose appropriate limitations on the discovery conducted by the prisoner. **Bradfield v. Dotson**, No. 02A01-9707-CV-00152, 1998 WL 63521, at *3 (Tenn. App. Feb. 17, 1998). The scope of such discovery is within the trial court's sound discretion. **Id**. Under the Tennessee Rules of Civil Procedure, which apply to proceedings before the Claims Commission,[6] "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." T.R.C.P. 26.02(1). Upon its own initiative, or pursuant to a motion, however, the trial court may limit discovery sought in a particular case if the court determines, **inter alia**, that "the discovery sought is unreasonably cumulative or duplicative or is obtainable from some other source that is more convenient, less burdensome or less expensive," or that "the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation." T.R.C.P. 26.02(1).

We conclude that the Commissioner did not abuse her discretion in denying Reid's requests for discovery in this case. At the time the Commissioner denied Reid's requests, the Commissioner ruled in favor of Reid on the issue of the State's liability for the loss of Reid's property. Thus, the only issue remaining for the Commissioner's determination was the value of the lost property and the amount of the award to be granted. While the requested items might have been relevant to the State's responsibility for the loss of Reid's property, none of the requested items appeared to be relevant to the only remaining issue in this case, the value of Reid's radio. Moreover, the amount in controversy in this case was relatively low. Except for his claim for loss of use and enjoyment, the most Reid contended the radio was worth was $150. In light of these considerations, we affirm the Commissioner's order denying Reid's motion to compel the discovery of the listed items.

---

[6]The Tennessee Claims Commission Act provides, **inter alia**, that claims proceedings on the Commission's regular docket "shall be conducted pursuant to rules of the Tennessee Rules of Civil Procedure where applicable and otherwise pursuant to rules and regulations promulgated by the commission." T.C.A. § 9-8-403(a)(1) (Supp. 1997); *see also* Tenn. Comp. R. & Regs. 0310-1-1-.01 (1992).

In support of his discovery requests, Reid cites section 4-5-218 of the Uniform Administrative Procedures Act (APA), which requires each State agency to make available for inspection and copying the agency's rules, final orders, and decisions. Specifically, the APA provides that

(a) Each agency shall make available for inspection and copying:

(1) Agency rules, final orders and decisions;

(2) Written statements of policy or interpretations formulated, adopted or used by the agency in the discharge of its functions;

(3) Opinions of the attorney general and

reporter rendered to the agency; and

(4)A description of its current organization stating the general course and method of its operation and the methods whereby the public may obtain information or make submissions or requests.

T.C.A. § 4-5-218(a) (Supp. 1997).

We are not convinced that this provision of the APA is relevant to our analysis of the discovery issue in this case. The cited statute does not require a State agency to copy its rules and provide them to a requesting party. Instead, the statute merely requires the State agency to "make [its rules] *available* for inspection and copying." T.C.A. § 4-5-218(a)(1) (Supp. 1997) (emphasis added). Contrary to Reid's argument, the statute does not grant pretrial discovery rights to parties involved in litigation with the agency. *See State v. Killebrew*, 760 S.W.2d 228, 231 n.6 (Tenn. Crim. App. 1988) (concluding

that T.C.A. § 40-32-101(c)(3), which requires release of arrest histories of defendant or potential witness in criminal proceeding to attorney of record upon such attorney's request, does not grant pretrial discovery rights to defendant).  In any event, we question whether pretrial discovery procedures even apply to documents that are a matter of public record.  *See State v. Adkins*, 725 S.W.2d 660, 663 (Tenn.) (noting that proof sought by defendant's counsel through pretrial discovery procedures was available as public records), *cert. denied*, 482 U.S. 909 (1987); *State v. Cottrell*, 868 S.W.2d 673, 677 (Tenn. Crim. App. 1992) (noting that judgment document sought through pretrial discovery was public record available for inspection).

In his fourth issue, Reid contends that the Commissioner erred in failing to sanction the assistant attorney general for her failure to comply with Reid's discovery requests.  *See* T.R.C.P. 37.02.  Based upon our conclusion that the Commissioner did not abuse her discretion in denying Reid's various discovery requests, we likewise conclude that the Commissioner did not abuse her discretion in denying Reid's motion for sanctions.

In his fifth and sixth issues, Reid challenges the adequacy of the Commissioner's award of $50.  In this regard, Reid contends that the Commissioner erred in failing to award him the full $150 requested to compensate Reid for the loss of his radio.  Reid also contends that the Commissioner erred in denying his claim for $100 per day for his loss of use and enjoyment of the radio.

In response, the State contends that the Commissioner properly refused to award the requested damages because Reid failed to prove these damages and, further, because the Tennessee Claims Commission Act permits claimants to recover their "actual damages only."  As pertinent, the Act provides that

> [t]he
> state
> will be
> liable
> for
> actual
> damag

es only. No award shall be made unless the facts found by the commission would entitle the claimant to a judgment in an action at law if the state had been a private individual.

T.C.A. § 9-8-307(d) (Supp. 1997).

We agree with the Commissioner's ruling that Reid failed to prove his damages in this case. As a general rule, damages for the loss or destruction of personal property are measured by the market value of the property at the time of its loss. *MCI Telecomms. Corp. v. Bonnell*, 1989 WL 19925, at *2 (Tenn. App. Mar. 8, 1989) (citing *Merritt v. Nationwide Warehouse Co.*, 605 S.W.2d 250 (Tenn. App. 1980)). Alternatively, if no market for the property exists, or if the market value is inadequate, the proper measure of damages for the loss of personal property is the actual value of the property to the owner. *Crawford v. Delta Airlines, Inc.*, No. 02A01-9612-CV-00296, 1997 WL 576535, at **2-3 (Tenn. App. Sept. 18, 1997) (citing *Merritt v. Nationwide Warehouse Co.*, 605 S.W.2d at 256). In either event, damages are calculated with reference to the date of the loss of the property, not the date of its acquisition or purchase by the owner. *Crawford v. Delta Airlines*, 1997 WL 576535, at *2; *MCI Telecomms.*, 1989 WL 19925, at *2. The burden of proving such damages

is upon the plaintiff.  *Crawford v. Delta Airlines*, 1997 WL 576535, at *3.

In the present case, Reid filed what purported to be an affidavit in which he opined that the actual value of the radio was $150 and that he had suffered additional damages of $100 per day for his loss of use and enjoyment of the radio. Reid's affidavit did not specify, however, whether the $150 value represented the purchase price of the radio, the value of the property at the time of the loss, or its value at the time Reid filed his affidavit.  Moreover, Reid presented no evidence to substantiate his claim that the damages for his loss of use and enjoyment of the property totaled $100 per day.[7]  In the absence of such proof, we conclude that Reid failed to carry his burden of proving damages for the loss of his personal property.[8]

As an aside, we question the validity of the affidavit filed by Reid because the record contains no evidence that the affidavit was properly sworn.  *See State v. Keith*, 978 S.W.2d 861, 867-70 (Tenn. 1998); *Moore v. Walwyn*, No. 01A01-9507-CV-00295, 1996 WL 17143, at **2-3 (Tenn. App. Jan. 19, 1996); *Sammons v. Collins*, No. 01A01-9009-CV-00325, 1991 WL 1056, at *1 (Tenn. App. Jan. 9, 1991). Specifically, the record contains no evidence that the affidavit was signed under oath before an authorized person.  Instead, the affidavit merely contains the following recitation:

> I, E. L. Reid # 203343, Claimant being first deposed under the oath of

---

[7]Inasmuch as Reid failed to meet his burden of proving damages in this case, we need not decide whether damages for loss of use and enjoyment constitute actual damages awardable under section 9-8-307(d) of the Tennessee Claims Commission Act.

[8]The State has not appealed the Commissioner's decision to award Reid $50 based upon her estimate of the radio's value.

perjury
and to
the
best of
my
knowle
dge do
state
the
followi
ng to
this
Honora
ble
Claims
Comm
ission
under
the
Tennes
see
Rules
of
Court;
. . . .

Inasmuch as the State has not challenged the validity of Reid's affidavit, we need not decide this issue. Regardless of whether the affidavit was properly executed, we conclude that Reid has failed to carry his burden of proving damages for the loss of his radio.

In his seventh issue, Reid complains that he was unable to prove the value of the radio because TDOC employees and officials unlawfully confiscated his personal records, which would have shown that the radio had a value of at least $150. Reid claims that the taking of his personal records constituted obstruction of justice and violated numerous provisions of the Tennessee Constitution.

This issue is without merit. We first observe that the list of pretrial discovery items requested by Reid did not include any personal records allegedly in TDOC's possession. We also note that Reid did not need these records to prove the value of the radio because, as the owner of the property, Reid was competent to testify as to its value. *See Merritt v. Nationwide Warehouse Co.*, 605 S.W.2d 250, 256 (Tenn. App. 1980); *Crook v. Mid-South Transfer & Storage Co.*, 499 S.W.2d 255, 260 (Tenn. App. 1973); *McKinnon v. Michaud*, 260 S.W.2d 721, 726 (Tenn. App. 1953). As we previously discussed,

Reid's affidavit failed to indicate whether the $150 value represented the purchase price of the radio, the value of the property at the time of the loss, or its value at the time Reid filed his affidavit. Thus, the evidentiary problem in this case was not that Reid failed to present documentation to support his claim, but that Reid failed to present any competent testimony of the property's value at the time of its loss.

In his tenth issue, Reid contends that he is entitled to additional compensation for the legal expenses he incurred in prosecuting his claim. Specifically, Reid seeks to be compensated for his postage and photocopying expenses, as well as for the time he spent performing legal research.

We conclude that this issue also lacks merit. The claimed expenses did not constitute allowable discretionary costs. *See Duncan v. DeMoss*, 880 S.W.2d 388, 390 (Tenn. App. 1994) (holding that allowable discretionary costs did not include attorney's fees or compensation for time spent in litigation); *see also* T.R.C.P. 54.04(2) (providing that allowable discretionary costs include court reporter expenses, expert witness fees, and guardian *ad litem* fees, but not travel expenses). Moreover, even if the claimed expenses did constitute allowable discretionary costs, the Commissioner was without authority to award these costs against the State. The Tennessee Claims Commission Act provides that the State will not be liable for "the costs of litigation other than court costs." T.C.A. § 9-8-307(d) (Supp. 1997). Thus, the Act specifically prohibited the Commissioner from taxing discretionary costs against the State in this case. *Phillips v. Tennessee Technological Univ.*, 984 S.W.2d 217, 218 (Tenn. 1998).

Although it is not clear, in his twelfth issue, Reid appears to argue that he was not adequately compensated by the Commissioner for the loss of his property. We believe that this argument has been addressed sufficiently elsewhere in this opinion, and we decline to address it further.

Finally, in his thirteenth issue, Reid alleges that TDOC has changed its policy so that it no longer allows radios to be brought into the facility where Reid is incarcerated. On appeal, Reid contends that he has a vested right to have a new

radio brought in to replace the one lost through TDOC's negligence and, further, that TDOC acted illegally when it changed its policy so as to retroactively affect Reid's rights.

As framed, Reid's last issue constitutes a challenge to a TDOC policy governing its facilities and inmates. In ***Baptist Hospital v. Tennessee Department of Health***, 982 S.W.2d 339, 341 (Tenn. 1998), our supreme court held that the Claims Commission lacked subject matter jurisdiction to issue a declaratory order as to the validity or applicability of a State agency's regulation. Based upon this holding, we conclude that the Claims Commission likewise lacked subject matter jurisdiction to rule on the validity or applicability of the TDOC policy challenged by Reid in this case.

We further note that, even if the Claims Commission had jurisdiction to award the requested relief, Reid did not raise this issue until he filed his notice of appeal challenging the Commissioner's final order. As a general rule, appellate courts do not "consider issues not dealt with in the trial court and not properly developed in the proof." ***Harlan v. Hardaway***, 796 S.W.2d 953, 957 (Tenn. App. 1990). If an issue "is not properly raised in the trial court, it will not be considered on appeal." ***Id***. Inasmuch as Reid's last issue was neither timely raised below nor ruled upon by the Commissioner, the issue is not properly before this court for review.

The Commissioner's final order is affirmed. Costs of this appeal are taxed to Reid, for which execution may issue if necessary.

_____
FARMER, J.


_____
CRAWFORD, P.J., W.S. (Concurs)


_____
LILLARD, J. (Concurs)