IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 1, 1999

## KUEHNE & NAGEL, INC. v. PRESTON, SKAHAN & SMITH INTERNATIONAL, INC.

**Appeal from the Circuit Court for Davidson County**
**No. 97C-3786     Walter C. Kurtz, Judge**

---

**No. M1998-00983-COA-R3-CV - Filed June 27, 2002**

---

This appeal involves a contract dispute between a customs broker and an importer of Russian vodka. The customs broker sued the importer in the Davidson County General Sessions Court seeking to recover $4,781.16, and the importer counterclaimed alleging fraud, breach of fiduciary duty, and usury. After the general sessions court dismissed both cases, the parties appealed to the Circuit Court for Davidson County. On the day of trial, the trial court denied the importer's motion to exclude nine invoices that the customs broker had failed to produce during discovery. Thereafter, the trial court, sitting without a jury, awarded the customs broker a $4,623.16 judgment and dismissed the importer's countersuit. On this appeal, the importer asserts that the trial court erred by refusing to exclude the nine invoices and that the evidence preponderates against the judgment. We have determined that the trial court did not abuse its discretion by denying the importer's motion in limine and that the evidence supports the judgment for the customs broker. Accordingly, we affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Paul J. Bruno, Nashville, Tennessee, for the appellant, Preston, Skahan & Smith International, Inc.

John E. Buffaloe, Jr. and Joel A. Vallejo, Nashville, Tennessee, for the appellee, Kuehne & Nagel, Inc.

**OPINION**

**I.**

Preston, Skahan & Smith International, Inc. ("Preston Skahan") is a Nashville company that imports and distributes Russian vodka. Sometime in 1995, it retained the services of Kuehne & Nagel, Inc. ("Kuehne & Nagel"), an international freight broker with over five hundred offices worldwide, including one in Nashville, to assist with completion of the customs paperwork, the

payment of customs duties and taxes, and the shipment of the vodka in the United States. Under the arrangement, Kuehne & Nagel received and held the vodka in its bonded warehouse in Nashville's foreign trade zone and then shipped it to Preston Skahan's customers at Preston Skahan's direction. In addition to charging a fee for these services, Kuehne & Nagel also advanced its own funds for the payment of customs duties, taxes, and freight charges and then sought reimbursement from Preston Skahan.

In mid-1996, Preston Skahan became concerned that Kuehne & Nagel was double billing some of its charges and was making other mistakes in the shipment of the vodka. Ultimately, Preston Skahan refused to pay Kuehne & Nagel's invoices. In April 1997, Kuehne and Nagel sued Preston Skahan in the Davidson County General Sessions Court seeking to recover $4,781.16 – eighty percent of which represented money that Kuehne & Nagel had advanced to Preston Skahan. For its part, Preston Skahan countersued, alleging that Kuehne & Nagel was guilty of fraud, breach of fiduciary duty, and usury.

After Kuehne & Nagel presented its evidence in the general sessions proceeding, the court suggested that the parties should take more time to do more discovery and indicated that it intended to stop the trial to attend a previously scheduled meeting. Rather than continue the general sessions proceeding, the lawyer for Kuehne & Nagel suggested that the court dismiss the case and that the parties would thereafter perfect de novo appeals to the Circuit Court for Davidson County. The court agreed, and after the case was dismissed, both parties perfected de novo appeals to the circuit court.

Preston Skahan decided to take some formal discovery once the case reached the circuit court. It sent Kuehne & Nagel written interrogatories and a request for production of documents. Two of these interrogatories and Kuehne & Nagel's responses form the basis for part of this appeal. Interrogatory Number Two stated:

> Describe each and every transaction between the Plaintiff and Defendant in the past five (5) years.[1] For each, provide the date of the transaction, the subject matter of the transaction, the purpose of the transaction, the services rendered by KUEHNE & NAGEL, INC. and what prices, if any, were charged for the services. Produce any and all documentation supporting, or referred to, in answering this interrogatory.

Kuehne & Nagel's response to this interrogatory was:

> Not Applicable. The issue at hand can be determined by reviewing the invoices in question which have been provided to the defendant.

---

[1] The parties, of course, had not been doing business with each other for five years.

Preston Skahan's Interrogatory Number Fourteen stated:

> Please provide a list of all payments made to the Plaintiff by the Defendant and state the check number for each payment, the amount of each payment, to whom the payment was made, for what invoice, and when the payment was made. Please produce copies of each of the checks made as payment.

Kuehne & Nagel's response to this interrogatory was:

> Regarding the issue at hand no monies have been received from the Defendant.

Dissatisfied with these responses, Preston Skahan's lawyer sent a follow-up letter to the lawyer representing Kuehne & Nagel explaining why he believed the requested information was relevant. The letter achieved nothing; Kuehne & Nagel produced no documents. Preston Skahan did not pursue the matter by filing a motion to compel under Tenn. R. Civ. P. 37.01.

On the morning of trial, Preston Skahan's lawyer filed a motion in limine to exclude "any evidence, or the testimony of any witnesses, which was not disclosed or provided" in response to its interrogatories or request for production of documents. Specifically, Preston Skahan argued that Kuehne & Nagel should not be permitted to introduce nine invoices and an accompanying summary substantiating Kuehne & Nagel's claim for $4,781.16. The trial court overruled the motion, and these documents were introduced during Kuehne & Nagel's case-in-chief over Preston Skahan's renewed objection. Based on these invoices, and after allowing some small offsets, the trial court awarded Kuehne & Nagel and a $4,623.16 judgment against Preston Skahan. On this appeal, Preston Skahan asserts that the trial court erred by denying its motion in limine and that the evidence preponderates against the judgment.

## II.
### THE MOTION IN LIMINE

Preston Skahan first asserts that the trial court should have excluded Kuehne & Nagel's nine invoices because Kuehne & Nagel had refused to produce these invoices during pretrial discovery. The control over pretrial discovery and the imposition of sanctions for the abuse of discovery or the refusal to comply with appropriate discovery requests is largely within the trial court's discretion. *Benton v. Snyder*, 825 S.W.2d 409, 416 (Tenn. 1992); *Lyle v. Exxon Corp.*, 746 S.W.2d 694, 699 (Tenn. 1988); *Buckner v. Hassell*, 44 S.W.3d 78, 83 (Tenn. Ct. App. 2000); *Vythoulkas v. Vanderbilt Univ. Hosp.*, 693 S.W.2d 350, 356 (Tenn. Ct. App. 1985). Accordingly, we will review the trial court's decision using the more-relaxed "abuse of discretion" standard.

### A.

When Professor Abraham Caruthers wrote *History of a Lawsuit* in the mid-nineteenth century, he devoted little space to the subject of "Preparation For Trial." The law as former judge Caruthers knew it depended almost entirely on the pleadings to provide advance notice of the parties' claims and defenses. A case's specifics usually emerged at trial. All that changed dramatically with the adoption of Tennessee Rules of Civil Procedure. Today, pre-trial discovery unquestionably overshadows pleadings as the way parties actually prepare for trial. It is through discovery that parties openly mine "to find the truth and to prepare for the disposition of the case in favor of the party who is justly deserving of a judgment." Irving Kaufman, *Judicial Control Over Discovery*, 28 F.R.D. 111, 125 (1962).

A party seeking pre-trial discovery is entitled to obtain information from other parties about "any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." Tenn. R. Civ. P. 26.02(1); *Reid v. State*, 9 S.W.3d 788, 792 (Tenn. Ct. App. 1999). The relevancy requirement has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on any of the case's issues. *Price v. Mercury Supply Co.*, 682 S.W.2d 924, 935 (Tenn. Ct. App. 1984). Of course, the ability to obtain relevant information presumes a proper inquiry. Discovery requests require some tailoring. If parties go too far, the courts may whittle down their discovery requests when the discovery sought "is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation." Tenn. R. Civ. P. 26.02(1); *Reid v. State*, 9 S.W.3d at 793. Parties who desire relief from improper or overburdensome discovery are expected to request a protective order under Tenn. R. Civ. P. 26.03.

A neutral application of these principles casts both parties in a bad light. Preston Skahan's two disputed interrogatories were entirely too broad. Read literally, Interrogatory Number Two sought a description of every transaction between the parties for the past five years even though their entire business relationship lasted approximately one year. It would have required Kuehne & Nagel to compile a detailed tabulation, together with supporting documents, of all the services it had provided Preston Skahan even though the dispute centered on a relatively small number of identifiable invoices. Interrogatory Number Fourteen required Kuehne & Nagel to audit Preston Skahan's entire payment history and to provide Preston Skahan with copies of its own checks. It had the practical effect of shifting the burden of preparing Preston Skahan's case for trial from Preston Skahan's lawyer to Kuehne & Nagel.[2]

Had Preston Skahan sought to compel Kuehne & Nagel to answer these interrogatories, the trial court would have been justified in scaling them back. Kuehne & Nagel did not have the responsibility to recreate the workaday business records that Preston Skahan had itself failed to keep and then supply these records to Preston Skahan so it could defend itself. The courts understand that

---

[2]Our review of the motives behind Interrogatory Number Fourteen is borne out by Preston Skahan's case at trial. Its president failed to introduce any cancelled checks or other business records. In fact, he conceded that the company did not have all its checks or the invoices it had received from Kuehne & Nagel.

"there is a far greater cost in complying with a discovery request than in making the discovery request. As a result there [can be] a strong temptation to inflict harm on one's adversary by seeking additional information for which the adversary will have to incur the cost." Samuel Issacharoff & George Loewenstein, *Unintended Consequences of Mandatory Disclosure*, 73 Tex. L. Rev. 753, 755 n. 8 (1995). Accordingly, the courts can and should actively discourage overburdensome discovery such as these two interrogatories.

Concluding that Preston Skahan's interrogatories were unduly broad does not end the inquiry. Although Preston Skahan's two unanswered interrogatories were objectionable in light of the issues actually involved in this case, Kuehne & Nagel's self-help "stonewalling" responses were not entirely appropriate. The party on whom a request for discovery has been served must serve a written response, usually within thirty days, from the request. Tenn. R. Civ. P. 34.02. If that party objects to any request, the reasons for objection must be stated. As a general matter, the rules favor the production of requested information in all cases where the request is reasonable. Therefore, relief from overbroad or unduly burdensome discovery should be sought through a motion for a protective order. *See* Tenn. R. Civ. P. 26.03. The party opposing discovery has the burden to establish good cause justifying issuance of a protective order. *Loveall v. American Honda Motor Co.*, 694 S.W.2d 937, 939 (Tenn. 1985). Kuehne & Nagel did not follow that procedure in this case.

**B.**

Tenn. R. Civ. P. 37.02 places a broad array of discovery sanctions at a trial court's fingertips, including the sanction of preventing a party from introducing certain matters in evidence.[3] While trial courts have considerable discretion in fashioning appropriate sanctions, the nature of the sanctions depends upon (1) the party's reasons for not providing the requested discovery, (2) the importance of the information sought, and (3) the time needed to respond effectively to the information. *Lyle v. Exxon Corp.*, 746 S.W.2d at 699; *Estate of Brock v. Rist*, 63 S.W.3d 729, 732 (Tenn. Ct. App. 2001); *Pettus v. Hurst*, 882 S.W.2d 783, 787 (Tenn. Ct. App. 1993).

In this case, Preston Skahan insists that the only appropriate sanction for Kuehne & Nagel's refusal to answer its interrogatories was to prevent Kuehne & Nagel from introducing the nine disputed invoices that it did not produce during discovery. This sanction, had it been imposed, would have effectively prevented Kuehne & Nagel from presenting its case in chief. That would have been an extreme sanction indeed, given that neither party is completely blameless in this discovery dispute.

The purpose of having trials is to get at the truth and then to arrive at a just adjudication of the parties' rights. *State v. Johnson*, 632 S.W.2d 542, 546 (Tenn. 1982); *Boone v. Citizen Bank & Trust Co.*, 154 Tenn. 241, 245, 290 S.W. 39, 40 (1927). Questions regarding the admissibility of evidence touch on the court's ability to reconstruct past events in its effort to arrive at the truth. Categorically excluding relevant evidence obviously hampers the judicial system's truth-seeking purposes. *State v. Briley*, 619 S.W.2d 149, 152 (Tenn. Crim. App. 1981). For that reason, excluding

---

[3]Tenn. R. Civ. P. 37.02(B).

relevant evidence is an extraordinary step that should be sparingly employed. *Richardson v. Miller*, 44 S.W.3d 1, 21 (Tenn. Ct. App. 2000); *State v. Hampton*, No. W1999-00983-CCA-R3-CD, 2000 WL 1840071, at *6 (Tenn. Crim. App. Dec. 6, 2000) *perm. app. denied* (Tenn. May 14, 2001). As long-time Harvard law professor John Maguire noted, exclusion of evidence not shown to be unreliable can give a party "a perfectly undeserved windfall." John M. Maguire, *Evidence: Common Sense and Common Law*, 123 (1947).

In this case, the trial court opted to admit Kuehne & Nagel's nine invoices which were unquestionably relevant to matters at issue in the case. We are not inclined to second-guess the trial court's decision to admit them for three reasons. First, Preston Skahan's interrogatories were overly broad and would have been unduly burdensome to answer. Second, Preston Skahan did not move under Tenn. R. Civ. P. 37 to compel Kuehne & Nagel to answer these interrogatories.[4] Third, granting the requested sanctions would have cut the heart out of Kuehne & Nagel's ability to make its case-in-chief and would have reduced the whole trial to little more than a vague, inconclusive, undetailed swearing contest between the partisan witnesses who appeared for each side. To let the dispute degenerate to that level might have served Preston Skahan's trial strategy, but it would hardly have served justice.

We share the trial court's impression that had Preston Skahan really wanted to find out the documentary basis for Kuehne & Nagel's claim, it could have simply asked specifically for all the invoices on which the broker based its claim and the related payment records. Had these appropriately tailored requests been denied, Preston Skahan could then have filed a motion to compel discovery pursuant to Tenn. R. Civ. P. 37.01 which would undoubtedly have been granted.[5] Had Kuehne & Nagel still refused to produce the invoices, exclusion of the invoices under Tenn. R. Civ. P. 37.02(B) would have been warranted.

### III.
#### THE EVIDENTIARY SUPPORT FOR THE JUDGMENT

Preston Skahan also attacks the judgment by arguing that the evidence preponderates against it. We review decisions in bench trials using the settled standard contained in Tenn. R. App. P.

---

[4]Motions to compel have been called both "the usual remedy" and a "predicate" to seeking stiffer penalties for non-production. 1 Laurence A. Pivnick, *Tennessee Circuit Court Practice* § 18-12 (2002). Motions to compel should be made in the court where the action is pending and can be used to obtain relief against a recalcitrant litigant who fails to answer an interrogatory question or refuses to produce a requested document. Tenn. R. Civ. P. 37.01(2). Decisions to grant a motion to compel rest in the trial court's reasonable discretion. *State v. Vanderford*, 980 S.W.2d 390, 397 (Tenn. Crim. App. 1997). Where such a motion is granted, the courts may require the party who necessitated the motion to pay the prevailing side's reasonable expenses in pursuing the motion. Tenn. R. Civ. P. 37.01(4); *American Steinwinter Investor Group v. American Steinwinter, Inc.*, 964 S.W.2d 569, 573-74 (Tenn. Ct. App. 1997).

[5]A motion to compel was not the only relief available to Preston Skahan. When confronted at trial with information it supposedly had never seen before, Preston Skahan could have moved for a continuance to marshal information to refute the invoices. *Lyle v. Exxon Corp.*, 746 S.W.2d at 698-99 (involving a court's offer of a continuance during trial to permit a party to deal with previously undisclosed evidence). However, Preston Skahan did not request this relief.

-6-

13(d). With regard to a trial court's findings of fact, we will review the record de novo and will presume that the findings of fact are correct "unless the preponderance of the evidence is otherwise." We will also give great weight to a trial court's factual findings that rest on determinations of credibility. *In re Estate of Walton*, 950 S.W.2d 956, 959 (Tenn. 1997); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000). However, if the trial judge has not made a specific finding of fact on a particular matter, we will review the record to determine where the preponderance of the evidence lies without employing a presumption of correctness. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997).

Reviewing findings of fact under Tenn. R. App. P. 13(d) requires an appellate court to weigh the evidence to determine in which party's favor the weight of the aggregated evidence falls. *Coles v. Wrecker*, 2 Tenn. Cas. (Shannon) 341, 342 (1877); *Hohenberg Bros. Co. v. Missouri Pac. R.R.*, 586 S.W.2d 117, 119 (Tenn. Ct. App. 1979). There is a "reasonable probability" that a proposition is true when there is more evidence in its favor than there is against it. *Chapman v. McAdams*, 69 Tenn. 500, 506 (1878); 2 McCormick on Evidence § 339, at 439 (John W. Strong ed., 4th Practitioner's ed. 1992) (stating that "the existence of a contested fact is more probable than its nonexistence"). Thus, the prevailing party is the one in whose favor the evidentiary scale tips, no matter how slightly. *Bryan v. Aetna Life Ins. Co.*, 174 Tenn. 602, 611, 130 S.W.2d 85, 88 (1939); *McBee v. Bowman*, 89 Tenn. 132, 140, 14 S.W. 481, 483 (1890); *Chapman v. McAdams*, 69 Tenn. at 503; *Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999).

Tenn. R. App. P. 13(d)'s presumption of correctness requires appellate courts to defer to a trial court's findings of fact. *Fell v. Rambo*, 36 S.W.3d 837, 846 (Tenn. Ct. App. 2000); *Taylor v. Trans Aero Corp.*, 924 S.W.2d 109, 112 (Tenn. Ct. App. 1995). Because of the presumption, an appellate court is bound to leave a trial court's finding of fact undisturbed unless it determines that the aggregate weight of the evidence demonstrates that a finding of fact other than the one found by the trial court is more probably true. *Estate of Haynes v. Braden*, 835 S.W.2d 19, 20 (Tenn. Ct. App. 1992) (holding that an appellate court is bound to respect a trial court's findings if it cannot determine that the evidence preponderates otherwise). Thus, for the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect.

In this case, Kuehne & Nagel had the burden to prove that it had performed services and advanced monies on Preston Skahan's behalf for which it was entitled to payment. Its case consisted of business records and the testimony of the branch manager of its Nashville office. Together, this evidence showed that the parties had a contractual relationship entitling Kuehne & Nagel to payment for its work and that the company had $4,781.16 in outstanding invoices against Preston Skahan for work performed, for which it was owed money. It is obvious that the trial judge believed this evidence.

Against that, Preston Skahan's president testified that he wrote all his company's checks and that, on the basis of some of these records, "I know that we have paid within [a] year's time $25,886.76." That testimony, while unrefuted, sheds no real light on Kuehne & Nagel's claim. Preston Skahan introduced no evidence matching up its payments with Kuehne & Nagel's invoices,

and it made no comparison of total billings and total payments between the parties over any time period. Preston Skahan could very well have paid over $25,000 corresponding to some period of time and still not have paid all it owed. That, indeed, would be consistent with Kuehne & Nagel's claim. Kuehne & Nagel at no time said that Preston Skahan never paid anything. The dispute was over whether it had paid everything.

After hearing the parties' evidence, the trial court expressly found that, "given the burden of proof and the lack of specifics on [Preston Skahan's] part related to these bills, I really don't have any choice . . . but to [award Kuehne & Nagel judgment]." Specifically, the trial court said

> Here, I think that [Kuehne & Nagel] has shown by the testimony and the records that the amount is owed. I could - - I guess I could raise a question about why [it] didn't prove the total amount billed against the total amount paid, but that really goes to the weight of it. And I think there's sufficient proof there to say that [Kuehne & Nagel] has at least carried their initial burden of proof. . . . [As for Preston Skahan, it] ha[d] the tools at hand to produce records of [its] checks . . . [and] the tools at hand to even get the invoices from [Kuehne & Nagel], but [it did not] do so. I find that to be a little odd. And I don't think that I can rule in [Preston Skahan's] favor based on these sort of vague feelings about the account not [being] backed up by numbers, checks, and invoices.

Both sides could have done more at trial to prove their positions. At the same time we recognize that in terms of what was at stake, this case was not the federal government's antitrust prosecution of Microsoft. Although it obviously would have preferred more evidence, especially from Preston Skahan, the trial court conscientiously weighed what evidence the parties provided it. Applying Tenn. R. App. P. 13(d)'s prescribed standard of review, we cannot say, taking all the evidence as a whole, that it preponderates against the trial court's decision.

## IV.

We affirm the $4,623.16 judgment against Preston Skahan and remand the case to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal to Preston, Skahan & Smith International, Inc. and its surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE