# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### February 13, 2003 Session

## STEPHEN MORGAN v. PAULA MORGAN

### Appeal from the Chancery Court for Robertson County
### No. 14647    Carol A. Catalano, Chancellor

---

### No. M2002-00793-COA-R3-CV

---

Husband and Wife were declared divorced on the basis of stipulated grounds. Wife appeals the classification and division of the property. We affirm the decision of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and MARIETTA M. SHIPLEY, SP. J., joined.

Thomas F. Bloom, Nashville, Tennessee, for the appellant, Paula L. Morgan.

Joe R. Johnson, II, Springfield, Tennessee, for the appellee, Stephen F. Morgan.

### MEMORANDUM OPINION[1]

Stephen F. Morgan ("Husband") and Paula L. Morgan ("Wife") were married on August 8, 1997. It was the fourth marriage for Husband and the third for Wife. At the time of the marriage Husband was 43 and Wife was 31. The marriage was rocky from the beginning, and the parties separated twice before divorce proceedings were finally initiated. They separated for the first time in April of 1998 and reconciled sometime at the end of that year. The separated for the second and final time in March of 1999. They lived together as husband and wife for a total of seventeen months.

---

[1]Tenn. R. Ct. App. 10 states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

When the couple got married, Husband was a farmer; he owned and worked his own dairy farm in Portland, Tennessee. Wife, on the other hand, entered the marriage with a Nissan Sentra and separate property of $15,666.67.[2] Wife also brought with her a daughter from a previous relationship. Wife did not work during the marriage, but before her marriage to Husband, Wife worked at various jobs that paid at or near minimum wage.

Husband testified that his farming operation was financially sound at the time the couple was married, but that he began to experience financial difficulty in 1997 or 1998. Husband stated that his costs and expenses rose with the addition of Wife and her daughter to his household and that the increased expenses offset any gains in gross profits. He also felt that his new marriage distracted him somewhat from his farming. His financial difficulties culminated in 1999 when he filed for Chapter 12 bankruptcy. Wife, however, alleges that Husband only declared bankruptcy after she refused to renew their relationship and disagrees that his financial situation was anything but sound. The trial court specifically found that Wife was aware at the time of the marriage that Husband was $400,000 in debt and that even after the bankruptcy Husband would owe considerable money.[3]

Husband filed for divorce in May of 1999 on the grounds of inappropriate marital conduct and irreconcilable differences. Wife filed for temporary support and Husband was ordered to pay support in the amount of $150 per week. The couple's relationship had deteriorated so much at this point that Husband was arrested for assault and Wife was arrested for vandalism; there were mutual restraining orders to keep the two from being in contact with each other. Wife filed a counter-complaint for divorce in August of 1999, seeking a divorce on the grounds of inappropriate marital conduct, adultery, and irreconcilable differences. She also sought spousal support.

The bankruptcy court entered an agreed order granting relief from the automatic stay to permit Wife to proceed in the divorce proceedings and also ordered the trustee to disburse $10,000 of the funds to the Chancery Court. The $10,000 represents a portion of the money received after an auction of farm equipment. The bankruptcy court order specified that it did "not reflect any agreement by the parties that the Debtor's wife has an interest in farm equipment sold at auction in this Chapter 12, and further does not limit the wife to a maximum of $10,000 for her marital interest in this farm equipment."

The trial court heard testimony on January 3, 2002. The parties stipulated that grounds for divorce existed. As a result, the trial court declared the parties divorced, classified and divided the marital and separate property, and handled all other matters then pending. The trial court made extensive factual findings and specifically held:

---

[2] Wife's $15,667.67 represented her share of the proceeds of a class action lawsuit against Circle K Stores, Inc. The trial court found that Wife had provided $15,000 of this money to Husband and that neither party knew where the money went. There was none left at the time of trial.

[3] The bankruptcy plan provided for full payment of creditors through the sale of assets and with $100,000 Mr. Morgan borrowed from his family trust.

That Ms. Morgan be awarded a judgment in the amount of $3,662.44 from Mr. Morgan for which execution may issue for unpaid medical bills incurred by Ms. Morgan. This amount shall be paid out of funds withheld by the bankruptcy trustee.

That Ms. Morgan be awarded a judgment from Mr. Morgan in the amount of $923 for past due spousal support. Further, that this amount shall be paid out of monies set aside by the bankruptcy trustee. That the following items of marital property be awarded to Ms. Morgan: the bedroom suite, computer, computer chair, dining room set, and household goods purchased by the parties during their marriage.

That the 1998 Isuzu be awarded to Ms. Morgan.

That the John Deere Tractor, and any proceeds from the sale of said tractor, be awarded to Mr. Morgan.

. . . .

That the following items be awarded to Ms. Morgan as her separate property: the gifts of Mr. Morgan, the sofa, the washer, the dryer, and the refrigerator; her pre-marital dinette set; and the settlement she received from Robertson County in her lawsuit against Robertson County.[4] That the Court awards Ms. Morgan the sum of $2,500 from the $10,000 set side by the bankruptcy court. That all of the real estate be awarded to Mr. Morgan. That Ms. Morgan's request that Mr. Morgan provide health insurance be denied.

A subsequent agreed order was entered clarifying the distribution of the $10,000 sent by the bankruptcy trustee and held by the clerk: Wife was to received a total of $7,085.44, representing the judgments for unpaid medical bills and past due pendente lite spousal support as well as the $2,500 awarded Wife as her share of the marital property. Husband was to receive the balance of $2,914.56.

Wife appeals, arguing that the trial court: (1) did not award her an equitable share of the marital property; (2) erred in finding that the John Deere Tractor did not increase in value during the marriage; and (3) erred in determining that she did not substantially contribute to the preservation and appreciation of the farming operation based solely on the short duration of the marriage.

## I. Classification of Marital and Separate Property

Upon the dissolution of a marriage, courts are called upon to divide the assets the parties accumulated during the marriage. Such decisions are very fact-specific, and many circumstances

---

[4]This is a different settlement from that Wife received in the Circle K lawsuit. The record is devoid of testimony regarding the amount of this settlement. Wife was questioned about her recent involvement in a lawsuit against Robertson County in which she sought $550,000 in damages. She was prohibited by the settlement agreement from discussing the terms of the settlement.

surrounding the property, the parties, and the marriage itself play a role. The task involves several steps, the first being to determine whether an asset is subject to division at all.

Tennessee, being a "dual property" state, recognizes two distinct classes of property: "marital property"and "separate property." *Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988). Separate property is not part of the marital estate subject to division. *Cutsinger v. Cutsinger*, 917 S.W.2d 238, 241 (Tenn. Ct. App. 1995). Accordingly, when it comes to dividing a divorcing couple's property, the court should initially identify the separate property, if any, belonging to each party. *Anderton v. Anderton*, 988 S.W.2d 675, 679 (Tenn. Ct. App. 1998).

The general rules for determining whether property is separate or marital are found in statute. Tenn. Code Ann. §§ 36-4-121(b)(1) & -121(b)(2). Property owned by one spouse before marriage is separate property. Tenn. Code Ann. § 36-4-121(b)(2)(A). Additionally, pursuant to Tenn. Code Ann. § 36-4-121(b)(2)(C) appreciation of property acquired before marriage is separate property, unless it is properly classified as marital property pursuant to Tenn. Code Ann. § 36-4-121(b)(1), which provides in relevant part:

> (B) Marital property includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation . . . .

> (C) As used in this subsection "substantial contribution" may include, but not be limited to, the direct or indirect contributions of a spouse as a homemaker, wage earner, parent, or family financial manager, together with such factors as the court having jurisdiction thereof may determine.

Every increase in value during the marriage does not constitute marital property. It is only where the spouse has made substantial contributions toward the preservation or appreciation of the property that the statute operates. *Harrison v. Harrison*, 912 S.W.2d 124, 127 (Tenn. 1995). Courts require some link between the spouse's marital efforts and the appreciation of the separate property before that appreciation is considered marital property. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 746 (Tenn. 2002). Where, for example, the appreciation is due solely to market factors and not to efforts of either spouse, the increase in value will not be considered marital property. *Id.* Indirect contributions by one party that allow the other party to pay for the property or asset constitute a substantial contribution to the preservation and appreciation of the property. *Brown v. Brown*, 913 S.W.2d 163, 167 (Tenn. Ct. App. 1994). Where the non-owner spouse proves that he or she has contributed substantially to the appreciation or preservation of the other spouse's separate property, the entire amount of the appreciation in the separate property will be treated as marital property. *Harrison*, 912 S.W.2d at 127.

A.  One-Half Interest in the 118 Acre Farm

Prior to the marriage, Husband owned several pieces of real estate, including a one-half interest in the 118 acre tract where Husband carried on a dairy farming operation and where the parties lived.  During the bankruptcy proceedings, the trustee sold at least one piece of property other than the 118 acre tract.  Husband was allowed to keep the 118 acre tract at the conclusion of the bankruptcy.  Additionally, in order to be discharged from bankruptcy, Husband was required to borrow from his family's limited partnership $103,000 against his real property.  The record does not indicate how much of that was attributable to the 118 acre tract.

Husband's interest in the 118 acre tract had a value of $88,500 in 1997, with a mortgage of approximately $49,355.  Its value at the time of trial was $103,250, with a mortgage encumbrance of $46,000.  On appeal, Wife asserts the farm increased in value during the marriage in the amount of $18,605 and that this increase is marital property.  However, at the end of the trial, the following exchange took place regarding Husband's real estate and specifically the 118 acre tract of farmland:

Court:  There is no evidence of what the increase in value is.

Counsel for Wife:  There's no - - we are taking no position.  If there's any increase in value on the property, it would only be because of the increase in real estate.  And Ms. Morgan could not say that she substantially contributed to that, so that's not been our position.  It's simply an indication of what the separate property of the husband is.

Court:  Well, and the Court acknowledges Ms. Morgan's acknowledgment that all of that is separate property and awards it to him.

This stated position is consistent with Wife's Pretrial Statement listing the parties' assets wherein she did not claim any increase in the value of the real property as marital property.

Contrary to the position taken in the trial court, on appeal, Wife interprets the trial court's ruling as holding that the increase in value of the farm was not marital property because Wife did not substantially contribute to the preservation and appreciation of the farm.  Wife disputes that factual holding.   In its final order, the trial court found:

That the parties lived together as husband and wife a total of about a year and a half.  Further, that Ms. Morgan did little of the farm work, and that Mr. Morgan performed a majority of the work on the farm land.  Furthermore, that Ms. Morgan has continuously resided in the home of the parties with her daughter by a previous relationship since August 1997 to present.  And, during some period of that time, she had her brother living with her.  Ms. Morgan has therefore lived on this property 4 years and 4 months, the result of a husband and wife living together less than 1 year

and a half. All of the real estate is deemed by the Court to be Mr. Morgan's separate property, and is awarded to him as such.

We do not agree with Wife's interpretation of this language in view of the earlier quoted colloquy between the court and counsel for Wife. The trial court's order did not address the increase in value of the property as a separate issue it had to decide, presumably because Wife had taken the position it was not. Thus, we cannot conclude that the trial court ruled that Wife's contributions were not substantial and, consequently, any increase did not qualify as marital property.

Wife also argues that the trial court improperly considered the duration of the marriage in determining the proper classification of the increase in value. Again, we do not interpret the trial court's statements regarding the time the couple spent together as relevant to any question of whether the increase in value was marital or separate property. The court simply did not address the classification of the increase in value because Wife had represented that it was not an issue and conceded that the increase was Husband's separate property.

Generally, this court will not entertain an issue on appeal that was not raised in the court below. *Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991) (citing *Lovell v. Metro. Gov't*, 696 S.W.2d 2 (Tenn. 1985)); *Davis v. Tennessean*, 83 S.W.3d 125, 127 (Tenn. Ct. App. 2001); *Harlan v. Hardaway*, 796 S.W.2d 953, 957 (Tenn. Ct. App. 1990). Numerous Tennessee cases hold that an issue raised for the first time on appeal is waived. *See, e.g., Norton v. McCaskill*, 12 S.W.3d 789, 795 (Tenn. 2000); *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983) (noting, "It has long been the general rule that questions not raised in the trial court will not be entertained on appeal . . ."). An issue not presented to, decided, or dealt with by the trial court will not be considered by appellate courts. *In re Adoption of a Female Child*, 42 S.W.3d 26, 32 (Tenn. 2001); *Reid v. State*, 9 S.W.3d 788, 796 (Tenn. Ct. App. 1999).

Wife did not present to the trial court the issue of whether the increase in value of the farm was marital or separate property and did not give the trial court the opportunity to rule on that issue. Consequently, we will not consider this issue. Additionally, Tenn. R. App. P. 36 provides "Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." To the extent the trial court's grant of the land to Husband as his separate property could be construed as based on an incorrect implicit classification of the increase in value, Wife caused that error, and is not entitled to the relief she requests. Accordingly, we decline to grant Ms. Morgan the relief she requests with regard to being awarded a portion of the increase in value of the farm.

## B. The John Deere Tractor

Prior to the marriage, Husband also owned a number of pieces of farm equipment. The farm equipment, or some of it, was sold by the bankruptcy trustee.[5] Included in that machinery was a John Deere tractor, which sold for $38,750. Wife does not dispute that the tractor and other equipment were Husband's separate property. Rather, she claims that the increase in the value of the tractor was marital property. The trial court found there was no increase in the value during the marriage, and in fact there was still existing a debt attributable to the tractor. Wife asserts that finding is in error. Wife's position is based upon the argument that if married parties reduce the debt on one spouse's separate property through their joint efforts so that the equity is increased, that equity is marital property, relying on *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996).

Husband bought the tractor in 1992 for $62,000, and paid $10,000 down at that time. He testified he made semiannual payments of $7,000, although other factors would indicate that $7,000 might be a yearly total. He also made the final payment of approximately $10,000 from the proceeds of loans he took out on his life insurance policies. Wife argues that, at the time of the marriage Husband owed approximately $30,000 which was paid off during the marriage through use of marital funds and the $10,000 loans, which are still outstanding. Thus, Wife argues, when the tractor was sold at auction by the bankruptcy trustee for $38,750, $28,750 represented equity as marital property and should have been divided between the parties.

Wife's position that approximately $30,000 was owed on the tractor at the time of the marriage is based upon an entry in Husband's 1997 financial statement for $30,000 to John Deere Credit. Husband testified this entry was not related to the tractor, but was a note for feed, fertilizer, and supplies purchased at Robertson County Co-op which was financed through John Deere Credit.

Contrary to assertions made in his brief, Husband did not testify that he paid off the tractor before the marriage. Rather, he testified he paid it off prior to the bankruptcy, but could not remember exactly when the loan was paid in full. However, in identifying an insurance policy statement showing the cash value and other information regarding the policy as of February, 1999, Husband testified that the statement predated the loan he made to pay off the tractor. Thus, we can conclude that the tractor was paid off after February 1999 and before he filed bankruptcy later in 1999.

Thus, at most, Husband made three or four semiannual payments during the marriage using farming operation money that Wife asserts were marital funds. Because no evidence was introduced of the terms of the loan, such as the interest rate, and no more specific evidence of the actual payments, it is impossible to calculate what percentage of the overall increase in equity may have

---

[5]The equipment netted a total of $82,246.15, and the funds were distributed to creditors, with the exception of the $10,000 that was sent to the trial court herein for distribution.

occurred during the marriage. Our best estimate is approximately 20%.[6] Thus, even if we were to agree that the $38,750 the tractor bought at auction was equity, the maximum portion of that amount that could logically be characterized as an increase attributable to marital efforts is $7,750.[7]

In any event, the proceeds from the tractor were combined with the proceeds from other farm equipment to pay creditors. Thus, to the extent payments on the tractor were made, as Wife asserts, from proceeds of the farming operation, the recovered equity in the tractor was used to repay expenses of that operation. Consequently, viewing the entire operation as a whole, it is clear there was no surplus and no value to the overall operation. Thus, the trial court's conclusion there was no value to the tractor, but instead an outstanding debt on it because of the insurance loan, is easily understood.

For purposes of our examination of the equity of the division of marital property, Wife's final issue, we will consider the $7,750 as includable in the marital estate.

## II. Equitable Division of the Marital Estate

Finally, Wife argues that the trial court erred by failing to award her an equitable share of the marital property. After classification of the parties' property as either marital or separate, the trial court is charged with equitably dividing, distributing, or assigning the marital property in "proportions as the court deems just." Tenn. Code Ann. § 36-4-121(a)(1). The court is to consider several factors in its distribution. Tenn. Code Ann. § 36-4-121(c) (listing the factors to be considered). The court may consider any other factors necessary in determining the equities between the parties, Tenn. Code Ann. § 36-4-121(c)(11), except that division of the marital property is to be made without regard to marital fault. Tenn. Code Ann. § 36-4-121(a)(1).

A trial court's division of marital property is not rendered inequitable simply because it is not precisely equal. *Cohen*, 937 S.W.2d at 832; *Kinard v. Kinard*, 986 S.W.2d 220, 230 (Tenn. Ct. App. 1998). Similarly, equity does not require that each party receive a share of every piece of marital property. *King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998); *Brown*, 913 S.W.2d at 168. The overall equity in the division of marital property is dependent on the facts of each case. The fairness of a particular division of property between two divorcing parties is judged upon its final results, *Watters v. Watters*, 959 S.W.2d 585, 591 (Tenn. Ct. App. 1997), and the trial court has a great deal of discretion concerning the manner in which it divides marital property. *Smith v. Smith*, 984 S.W.2d 606, 609 (Tenn. Ct. App. 1997); *Wallace v. Wallace*, 733 S.W.2d 102, 106 (Tenn. Ct. App. 1987). Appellate courts ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c), or is not supported by a preponderance of the evidence. *Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996); *Brown*, 913 S.W.2d at 168.

---

[6]The $62,000 purchase price was reduced by two $10,000 payments from Husband's separate property; the parties were married for 2 of the 7 years of the loan; and 2/7 of the $42,000 of principal paid other than by the two $10,000 payments is $12,000. That amount is 19.4% of the total purchase price.

[7]20% of $38,750 is $7,750.

Among the factors to be considered in distributing marital property are the duration of the marriage, the contribution of each party to marital and separate property, and the estate of each party at the time of the marriage. These factors are considered in the rule often applied to marriages of short duration that division of the property should be made in such a way that "as nearly as possible, places the parties in the same position they would have been in had the marriage never taken place." *Batson*, 769 S.W.2d at 859. Relying on that principle, Wife asks that the court put her in the same position as when she entered the marriage with an award of at least $20,000 in marital property.

The "marriage of short duration" principle cannot be interpreted as entitling a party to leave a marriage in the same economic position he or she entered it. Where financial difficulties arise during the marriage, the marital estate may become so depleted that it simply is not possible to restore a party's finances to its premarital level through distribution of that marital estate. Neither party in this marriage can be restored exactly to their premarital financial position.

The parties submitted pretrial statements listing marital and separate property. They agreed that the marital property included some of the contents of the home, specifically the bedroom set, computer, computer chair and desk, and household goods. The trial court awarded all this property, plus dining room furniture claimed by Wife to be marital, to Wife. This property was not assigned a value by either party or the trial court, even though it represents the bulk of the marital assets remaining by the time of the trial.

Several other assets Wife claimed to be marital property were determined by the court to have no value, and Wife has not appealed those rulings, with the exception of the increase in equity in the John Deere tractor. Even when the $7,750 estimated increase in the equity in the tractor is included in the marital estate, we find the trial court's award to Husband of the proceeds of the sale of the tractor to be equitable in view of the relative contributions of each party to the farming operation and the fact Husband still owes money he used to pay off the tractor.

The trial court divided the $10,000 fund from the bankruptcy by awarding $2,500 to Wife and $7,500 to Husband. The $10,000 came from the proceeds from the sale of farm equipment Husband had acquired over the years in his farming operation. It is here that the trial court's conclusions regarding the contributions of each to the marital estate is relevant.

Another factor to be considered is the value of the separate property of each party. While Wife asserts Husband was able to retain at least his one-half interest in the 118 acre tract, and also claims a value of $300,000 for all Husband's separate property, she overlooks the debt or encumbrances associated with that property. In addition, Wife failed to prove or even estimate a value for her separate property. That property included items that both parties agreed were gifts to Wife from Husband: a sectional sofa, a washer and dryer, and a refrigerator. Her separate property also included some furnishings and other items she owned before the marriage. In addition, she had the proceeds from the recent settlement of a lawsuit, and the amount of that settlement was not proved.

-9-

The trial court made extensive findings of fact in this case and considered all of the statutory factors in determining the distribution of marital property. The parties both entered the marriage of short duration with financial shortcomings. The trial court found that Wife had the ability to seek employment, yet she chose not to work and received pendente lite support from Husband. Husband works and has a significant child support obligation. The parties both claimed to make contributions toward the marriage, yet their testimony as to who was responsible for the most amount of work was contradictory. The trial court also found that Wife had been allowed to live on and enjoy the marital residence for over four years during the pendency of the divorce, while the couple only lived there as husband and wife for approximately seventeen months.

We do not find the distribution of marital property to be either inequitable or unsupported by a preponderance of the evidence. Consequently, we affirm the decision of the trial court. We also decline to award Wife's attorney's fees on appeal. We remand the cause for any further proceedings which may be necessary. Costs of the appeal are taxed to the appellant, Paula L. Morgan.

_____
PATRICIA J. COTTRELL, JUDGE